R. J. WILSON, tax receiver *et al.*, plaintiff in error, *vs.* THE
AUGUSTA FACTORY, defendant in error.

The Augusta Factory, an incorporated company, is only liable, under the
existing laws of this State, to pay a tax on the whole amount of the
capital stock of the company paid in, and not on the market value
thereof:

*Held,* That the Augusta Factory Company is liable for the payment of
all legal taxes on the property owned by it as a corporation which is
not included as a part of their capital stock and constitutes no part
thereof. McCAY, Judge, dissenting.

Corporations.    Taxation.    Constitutional law.    Before
Judge GIBSON.    Chambers.    Richmond county.    July, 1871.

The bill of the Augusta Factory made this case against
the tax collector and receiver of said county : In June, 1858,
certain persons formed a partnership, under the name of the
Augusta Factory, and soon after, bought from the Mayor
and Council of Augusta the mills, machinery and franchises
of the Augusta Manufacturing Company, for $140,000 00,
that being the price which the Mayor and Council of Au-
gusta had paid said manufacturing company for said prop-
erty.    On the 17th of December, 1859, these partners were
incorporated, under the name of the Augusta Factory, with
the powers, etc., granted to the McBean Company, on the
11th of February, 1850.    They accepted this charter of
1859, conveyed their shares to the corporation, and gave the
Mayor and Council of Augusta the corporation's bonds for
said $140,000 00.

The capital stock of the corporation was then $200,000 00,
being two thousand shares of $100 00 each, and its capital
consisted of real estate and mills and machinery therein, val-
ued at $140,000 00, and $60,000 00 paid in by said stock-
holders for working capital.

So the capital stock remained till January, 1863, when,
owing to the change in the value of currency, and subsequent
purchases of real estate, for operative's houses, it was in-

creased, by a stock dividend, to $600,000 00, or six thousand shares, at $100 00 each. At this sum it has since remained; that is the full cash value of the property, exclusive of their reserve fund. They have returned said capital for taxation, and, pursuant to section 812 of the Code of Georgia, they paid, annually, a tax of forty cents on each $100 00 on said $600,000 00, as the highest amount of capital paid in. This tax has been increased by addition of the county tax thereon. This has been done since said increase of stock. And they proposed to return the same for taxation in that way for 1871, but the tax receiver refused so to receive it, but insisted that they should return the capital stock at its market value, to-wit: $162 00 per share. In this he was backed by the Comptroller General. Injunction was prayed for against the collector and receiver. The Chancellor ordered them to show cause why the injunction should not issue.

Answering, they admitted the organization of the corporation and purchase of property, as charged. They denied that $140,000 00 was the value of the property in 1859, for that the same property was given in for taxation, in said county, in 1854, at $409,420 00; the same real estate and buildings, in 1866 and 1867, were given in at $400,000 00, and these defendants believe the property of the corporation now worth $500,000 00. The corporation had heretofore given in its taxable property, in said county, as follows: 1861, at $225,-000 00; 1862, at $230,000 00; 1863, at $1,500,000 00; 1864, at $6,000,000 00; 1866 and 1867, " city property," at $400,-000 00, and capital, at $200,000 00; and in 1868, 1869, 1870, " city property," at $200,000 00, capital, $220,000 00, and money and solvent debts, at $180,000 00. They deny that the currency affected the said increase of stock to $6,000,-000 00, and call attention to the fact that they made no change of that figure when currency changed.

The returns could not be under section 812 of the Code, because this company has no banking privileges, and that section applies to none other than corporations with such

privileges; because their returns must be to the Comptroller General, by section 822, and upon such returns, no county tax can be levied. If it gave in under section 812, they must have returned net profits, and all other its property and effects, by section 4828; and yet they made no such return, though they made such profits, and had such other property, etc., as appears by their exhibited reports. The answer concludes with further averments, to show that they are proceeding according to law, *bona fide,* and that the property should be taxed at a much larger figure than $600,000 00.

They objected to the injunction, upon the grounds, that there was no equity in the bill, as the remedy at law was adequate; or, if not, the equity was sworn off by the answer.

The Chancellor granted the injunction, upon condition that the corporation give in for taxation, in addition to its capital stock, a full account of all its *taxable* property owned and possessed by it, with its true value. The tax receiver and collector say this was error, because the stock should be taxed at its value in the market, and the factory assign as error the condition upon which injunction is ordered.

McLAWS & GANAHL, for tax collector and receiver. Capital stock to be taxed at market value: Code, secs. 799, 801; Constitution 1868, Art. I., secs. 21, 22. Meaning of "paid in:" Code, sec. 813; 8 Ga. R., 486; 10th, 162; 11th, 570.

W. HOPE HULL; F. MILLER, for Factory. Market value not to be regarded: Code, secs. 799, 813; 31 N. J. R., 512; 1 Hal., 100; 4 Hill, 20; 7th, 261, 276; 2 Black., 628; 3 Wallace, 573; 26 Ga. R., 662; 37th, 620. The shares belong to the stockholders, and not to corporation: 9 N. J. R., 427; 3 Howard, 133, 150; 12 Hill & J., 117. Capital taxed relieves property from tax: 31 Curt., 106; 4 Scam., 304; 7 Blackford, 395. Capital taxed reserves fund not taxed: Sec. 7 Tax Act, March 6th, 1869; 31 Curt., 106;

4 N. J. R., 442 ; 4 Paige, 399 ; 8 Ga. R., 500; 2 Wallace, 209 ; 4 Hill, 20.

WARNER, Judge.

This was a bill filed by the Augusta Factory Company against the tax receiver and tax collector of Richmond county, praying for an injunction to restrain the assessment and collection of a tax which the complainant alleges to be in violation of the existing tax laws of the State. The receiver assessed the capital stock of the company at $162 00 per share on its six thousand shares of capital stock, as the *ad valorem* or market value of the stock, on the 1st day of April last. Whereas, the complainant alleges, that said Augusta Factory, being an incorporated company, was bound only to return and pay a tax on $600,000 00, or $100 00 per share on its six thousand shares. · On hearing the application for an injunction, the same was granted by the presiding Judge, whereupon the defendants excepted. By the 15th paragraph of the 796th section of the Code, it is declared that " All owners of stocks in any incorporated company liable to taxation on its capital for such stock shall not be taxed as individuals." The 813th section of the Code declares that " the several railroads, and other incorporated or unincorporated companies of every kind, except banks, which are not exempt by their charter, or otherwise, or for which there is not a different method of taxation specially prescribed, pay the same rate *per cent.* upon the whole amount of their capital stock paid in as is levied on other capital." The question made by the record in this case is, whether the Augusta Factory, being an incorporated company, is bound, under the existing laws of the State, to pay a tax upon *the whole amount of the capital stock of the company paid in,* or whether the company is bound to pay a tax on *the market value* of that stock. To maintain the proposition contended for by the plaintiffs in error, we should have to interpolate into this

section of the Code the words, " or the market value thereof," so as to make the section read, that the incorporated companies in this State pay the same rate *per cent.* upon the whole amount of their capital stock paid in, or *the market value thereof,* as is levied on other capital. The State was adopting a method of taxation as a *revenue measure.* Clearly, it was not the intention of the General Assembly, in taxing the whole amount of the capital stock paid in by incorporated companies, to adopt a *sliding scale,* that, if the incorporated companies were successful in the management of their capital, and thereby enhanced the value of their capital stock in the market, they should pay an *additional* tax upon that capital in consequence of the successful management thereof by the respective companies ; nor was it the intention of the General Assembly that the tax on the whole amount of the capital stock paid in should be *abated,* if, by bad management or accidents, by flood or fire, or other casualties, the value of the capital stock of the respective companies should be *reduced* below its par value in the market. The intention of the General Assembly was to levy a tax on the whole amount of the capital stock paid in by incorporated companies, and to derive a *certain revenue* therefrom, and not a revenue dependent on *the fluctuations of the value* of that capital stock in the stock market. The State never contemplated such a *speculative* method of raising revenue as that, and has not done so. The wisdom of the General Assembly, in imposing the tax upon the whole amount of the capital stock paid in by incorporated companies, instead of the market value thereof, as a *revenue measure,* is practically illustrated by the fact that the capital stock of a large majority of the incorporated companies in the State will not sell for the par value thereof in the stock market, and if the construction of the law as contended for by the plaintiffs in error should be adopted the State would be the loser by it so far as her *revenue* is concerned. The law does not impose a tax on the *income,* or *profits* of the capital stock of incorporated companies, but on

Wilson *et al. vs.* The Augusta Factory.

the capital stock thereof paid in as *the property* of the corporation. The true construction of the law, as a revenue measure, therefore, is, that incorporated companies in this State pay the same rate *per cent.* upon the whole amount of their capital stock paid in as is levied on other capital, whether the companies are successful or unsuccessful in their respective enterprises, or whether their capital stock is above or below its par value in the stock market. It is true that the Constitution of 1868 declares " that taxation on *property* shall be *ad valorem,* and uniform on all species of property taxed." The capital stock of the Augusta Factory is *one species of property,* and the company is required to pay the same rate *per cent.* on the whole amount of their capital stock paid in as is levied and paid on *other capital.* The capital stock of the company, and other capital, is the same species of property, and the rate of taxation on both is the same, and is, therefore, a *uniform* tax on *that species of property* as contemplated by the Constitution. The Augusta Factory, an incorporated company, is only liable, under the existing laws of the State, to pay a tax on the whole amount of the capital stock of the company paid in, and not on the market value thereof.

The Augusta Factory Company is liable for the payment of all legal tax on the property owned by it, as a corporation, which is not included as a part of their capital stock, and constitutes no part thereof.

Judgment affirmed.

LOCHRANE, Chief Justice, concurred, but furnished no opinion.

McCAY, Judge, dissenting.

I agree with the majority of the Court that, under section 813 of the Revised Code, a corporation is only taxable " upon the amount of its capital stock paid in." Some verbal criticism may, perhaps, be made upon the language, leading to a

different view, but the natural, common sense reading of the whole section, especially if the last clause (now repealed, but a part of the Act when passed,) be considered. Any other view would be very unfair to the corporation, since they would have been taxed upon their whole stock, and then, also, upon their net annual profits.

But, in my judgment, this section of the Code is not now of force, for the reason that it is inconsistent with the 27th section of the 1st Article of the Constitution of 1868. The last clause of that section is in these words: "Taxation upon property shall be *ad valorem* only, and uniform upon all species of property taxed." This section engrafts a new feature into our Constitution, and is, to my mind, clearly inconsistent with the section of the Code referred to.

A corporation, though a creature of the law, is, nevertheless, in many respects, a person. As the owner of property, of houses, and lands, and personal effects, it imposes precisely the same burdens on the State as do private persons. When section 813 of the Code became the law, the Legislature was under no restraint, as to its taxing power. It might tax property specifically, or *ad valorem*, at its pleasure, and it was not required by the Constitution to make the taxes uniform upon all species of property taxed. But the 27th section, Article I., of the Constitution, expressly limits the taxing power of the General Assembly. It can now lay no taxes upon property, except *ad valorem*, and all taxes must be uniform upon all species of property taxed. What does this mean? Clearly, that property shall be taxed according to its value, and that property in one person's hands, or in one part of the State, shall not be taxed differently from the same property in another person's hands, or in another part of the State.

The section of the Code under consideration is intended to tax the property of corporations. In perfect accord with its constitutional power, at the time, it assumes that every corporation has taxable property to the amount of its *capital*

*stock paid in.* Sometimes this is true, but only sometimes. Very often its property is not nearly so large as the capital stock paid in. Corporations, like individuals, sometimes manage badly, or meet with misfortunes by flood and fire and fraud. Sometimes, directly the contrary is true. By wise investments and proper management, by fortunate appreciation of property purchased, and by other means, corporations are often worth more, a great deal, than the amount of capital stock paid in. More emphatically still is it true, that corporations often have possession of, and own, very large amounts of property beyond the capital stock paid in. In these days of credit and of bonds, it is a very common thing for large and small corporations to be the owners and managers of property built or bought upon credit, with very little capital stock actually invested.

Under this section of the Code, however, the property of the company may have decreased by losses, depreciation, or otherwise. However its property may have appreciated, or however it may have become the owner of property, by building, constructing or buying upon credit, but one rigid rule of taxation is to be applied. It is to be taxed according to the amount of capital stock paid in. If its stockholders have paid in $100,000 00, it is to be taxed upon that sum, at the same rate, *per cent.*, as the property of other people is taxed. If its houses be burned, if its property has depreciated, or has all been sqandered, it is still assumed to be the owner of $100,000 00, of property, for taxation. If it has proved a success, and its $100,000 00 has become $200,000 00, or, what is more usual, if it is carrying on large operations on credit, has extensive buildings, or long lines of railroad built upon credit, it is assumed to be the owner of property to the amount of $100,000 00. This is not, in my opinion, taxing *ad valorem.* True, the tax is to be a certain rate *per cent.;* but an arbitrary value is fixed, and the rate *per cent.* is laid upon that. One corporation is the owner of property worth $100,000 00, another is the owner of property worth

$1,000,000 00. The stockholders of each have paid in $100,000 00, and both are assumed to have that amount of taxable property, and the same rate *per cent.* being put upon it, at this assumed value, it is claimed that the tax is *ad valorem.*

I am not discussing the justice or propriety of such a mode of taxation, but its consistency with that clause of the Constitution which declares that all taxes upon property shall be *ad valorem.* When this section of the Code was adopted the Legislature might or might not, at its discretion, take this mode of ascertaining the taxable property of a corporation. Taking the State over, it may be that as much revenue would come in by this way as any other. It may be, too, that this mode of taxing corporations is not unjust. But, as I have said, this is not the question. Is it *ad valorem,* according to value? Is it, or not, inconsistent with the Constitution of 1868? It may be very just and fair, but if it is not *ad valorem* it is unconstitutional and void. Suppose the General Assembly were to say that all horses and mules shall be considered worth $100 00, and one *per cent.* tax be laid on them, or that all land shall be considered worth $5 00 per acre, and one per cent. tax be laid on it, would it not be absurd to say that this was a tax *ad valorem?* An *ad valorem* tax is one that depends upon the actual value of the thing taxed, and varies as that value varies. It must be remembered that the *stock* of a corporation does not belong to the corporation. The stock belongs to the stockholders. The corporation is an entity, an existence of itself, entirely different from its stockholders. The stock is an independent species of property. It may be bought and sold, and inherited. It may become the subject of litigation, and call upon the public for protection, and give it the same trouble as any other property, and this entirely independently of the property owned by the corporation. The stock may be worth but little, the property of the company much. Evidently, the section of the Code was not intended to tax the stock.

That belongs to the stockholders, and, generally, by our law, is not taxed. The intent was to use the amount of stock paid in as the measure of the value of the property owned by the company, and assess a *per cent.* upon the value thus fixed. This, it is clear to me, is not a taxing *ad valorem.*

Again, this section of the Code is inconsistent with the Constitution of 1868, in that the tax it assesses upon corporations is a violation of the provision that taxes shall be uniform on all species of property taxed. If this means anything, it seems to me that it prohibits taxing the same species of property one way in one person's hands, and another way in another person's hands. If a private person owns property by the general law, he pays tax upon it according to its value. It may be that he has paid nothing for it, or he may have paid for it more than its worth. He may be in debt for it, still he must pay tax on its value. A corporation is but a person. If John Doe and Richard Roe are taxed according to the value of the property they own, wholly regardless of what they have paid for it, and whether they have or have not paid for it, the law of uniformity requires that corporations shall pay tax upon the property they own in precisely the same way and by the same rule. In other words, as I understand the Constitution, corporations stand, as to taxes upon their property, just as do other persons. It is to be taxed *ad valorem,* and the rule that taxes are to be uniform on all species of property taxed is to be applied to corporations as well as to private persons. As a matter of course, these views do not cover cases where the Legislature, by contract, before this provision was inserted in the Constitution, had agreed with particular corporations upon some special mode of taxation. Even if it were competent so to do, I do not think it was the intent of the framers of the Constitution to abrogate any such contract, if otherwise binding upon the State.